UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRETT GOLDBERG,<br><br>        Plaintiff,<br><br>v.<br><br>PACE UNIVERSITY,<br><br>        Defendant. | Civil Action No.<br><br><br>(JURY TRIAL DEMANDED) |

Plaintiff Brett Goldberg ("Plaintiff") by and through undersigned counsel, hereby complains of Pace University ("Defendant" or "Pace") as follows:

## INTRODUCTION

1. Plaintiff brings this case as a result of Defendant's decision to substantially reduce the Plaintiff's education benefits, but without any reduction in charges, in conjunction with Defendant's decision to close campus, and transition all classes to an online/remote format as a result of the Novel Coronavirus Disease ("COVID-19").

2. While transitioning to online classes was important in view of the current pandemic, this decision deprived Plaintiff from realizing the benefits of the in-person instruction he has paid for. Those benefits included, but are not limited to, allowing Plaintiff to learn in person and to showcase his play to professional "representatives from the theater, film and television industries" in the Repertory Season ("Rep-Season,"), the culmination of three years of in-person instruction and collaboration at Pace's "The Actors Studio Drama School," ("The Actors Studio") in exchange for which he had already paid fees and tuition.

3. Defendant has refused to provide pro-rata reimbursement to Plaintiff for benefits that Defendant is no longer providing, and will not provide, during the remaining tenure of

1

Plaintiff in his final year of his Master of Fine Arts program. (Graduation was scheduled to take place on May 20, 2020, but has since been canceled.) As such, Plaintiff has been damaged by Defendant's retention of tuition funds for educational services that Defendant charged and collected for, but has not provided, and by Defendant's cancellation of the Rep-Season, which Plaintiff also paid for, but that Defendant has chosen to not provide now or at any time in the future.

4. Furthermore, Plaintiff has paid substantial amounts over three years to prepare for the Rep-Season, but a significant amount of that preparation is all for naught now that the Rep-Season has been canceled.

5. This action seeks refunds of the amount Plaintiff is owed on a pro-rata basis, the value of the Rep-Season, contract damages or in the alternative unjust enrichment damages, damages associated with conversion and the violation of New York General Business Law § 349, and an Order for Pace to correct its misleading advertising, together with other damages as pled herein.

**PARTIES**

6. Defendant Pace University is an institution of higher learning located in New York City, New York.

7. Upon information and belief, Defendant has an estimated endowment of approximately $182 Million.[1]

8. Upon information and belief, Defendant may be eligible to receive federal stimulus under the CARES Act. The CARES Act directs that approximately $14 billion dollars be distributed to colleges and universities based upon enrollment and requires that institutions must

---

[1] https://www.pace.edu/sites/default/files/files/finance-administration/financial-treasury-services/financial- statements/financial-statements-2018.pdf

use at least half of the funds they receive to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to COVID-19.

9. Plaintiff is an individual citizen of the State of New Jersey.

10. Plaintiff is currently enrolled as a full-time student in Defendant's graduate program at The Actors Studio as an aspiring playwright.

11. Plaintiff has paid substantial tuition for all three years of the Master of Fine Arts ("MFA") Pace graduate program, including the Spring 2020 semester.

12. Defendant offers an in-person, hands-on curriculum. Plaintiff did not choose to attend another institution of higher learning, or to seek an online degree, but instead chose to attend Pace and enroll in person to take advantage of the in-person give and take associated with an MFA graduate program. To that end, Plaintiff was promised by Pace, *inter alia,* networking and mentorship opportunities, in-person collaboration with other students and professors including but not limited to, readings and "workshopping" of his plays and screenplays. In fact, Pace advertises "faculty and student collaboration spaces," succinctly stating "We're here for YOU – and these new spaces reflect that."[2]

13. The Actors Studio specifically advertises the following to attract aspiring playwrights like Plaintiff:

> All students – actors, directors, playwrights – **train side-by-side as actors.**
>
> In Friday Workshops ["Process Lab"] the MFA candidates are exposed to different elements of the theater, such as script analysis, design, stage combat, directing, and auditioning for plays, musicals, film and television.
>
> All MFA black-box studios for professional training are designed and equipped according to state-of-the-art standards.
>
> Located at prominent and easily reached campus in downtown New York City.

---

[2] https://www.pace.edu/nyc

        New York City - the theatre capital of America and the largest media and cultural market in the world - provides Pace students with incomparable resources for the development of their art and the launching of their careers.[3]

14. In addition to tuition, Plaintiff was required to pay (and did pay) certain mandatory fees, including but not limited to General Fee, Activity Fee, Health Center Fee, and Technology Fee (collectively "Fees").

15. According to Defendant, the Fees are intended to cover "costs associated with ancillary services provided to students which are not covered by tuition".[4]

16. As a result of being restricted from campus, Plaintiff no longer has the benefit of the services for which these fees have been paid. For example, Plaintiff no longer has access to libraries, the university healthcare unit, or campus computer labs, and no longer has the ability to participate in student activities.

17. Plaintiff chose the Pace program so that he could have his play professionally produced in New York before, among others, professional agents, literary managers and artistic directors, and the like.

18. The Rep-Season is the cornerstone of the playwriting curricula. It is the selling point of the playwriting track for the students, including Plaintiff. The entire playwriting program is built around the Rep-Season, beginning with the first-year playwriting class in which the play for the Rep-Season is chosen. This is followed by the "Playwright Directors Unit" where the Rep-Season plays are workshopped the entire second year in an effort to prepare them for the production the following year. In the third year, students take "Process Lab" where the play is further developed and honed for the end of the year. The third year "Playwriting" class also

---

[3] https://www.pace.edu/dyson/departments/actors-studio-drama-school/unique-aspects-actors-studio-drama-school
[4] https://pace.smartcatalogiq.com/en/2019-2020/Graduate-Catalog/General-University/Tuition-and-Fees/Special- Course-Fees/

focuses on fine tuning the plays for the Rep-Season.

19.     Simply put, the culmination of Plaintiff's three years of hard work never came to fruition.

20.     Yet, Pace was unjustly enriched by receiving tuition without providing the professional Rep-Season that Plaintiff is entitled to.

21.     Pace has both refused to provide those benefits at present or in the future and also refused to refund the amounts paid for those benefits.

22.     Pace specifically advertises its Rep-Season as follows:

> **REPERTORY SEASON AND INDUSTRY SHOWCASE**:
>
> In their final year, all Actors Studio Drama School students present their work to the professional world and the public, in a fully-produced professional Repertory Season at a theater in downtown Manhattan.

23.     **Pace also advertises its "Playwriting Opportunities" as follows:**

- Their work is staged by their colleagues in Directing and Acting, in class and for the public.

- In the third year, their best work is presented in a professionally produced Repertory Season for the general public and the theater profession.

- In the last month of their training, their full-length play is professionally presented as a staged reading open to the public.[5]

24.     Simply put, Pace specifically markets the benefits of its on-campus learning experience along with its promise to provide a fully produced professional play production.

25.     Plaintiff relied on Pace's promises and the benefits it stated it could provide in choosing to attend the program at Pace.

---

[5] https://www.pace.edu/dyson/departments/actors-studio-drama-school/mfa-curriculum

26. Plaintiff's education has been changed from in-person, hands-on learning to online instruction, which is not comparable.

27. In some cases, the professors simply canceled classes—for example, the Process Lab ceased to exist after the COVID-19 shut down.

28. Plaintiff's online instruction is not commensurate with the same classes being taught in person.

## JURISDICTION AND VENUE

29. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens or entities of different States.

30. This Court has personal jurisdiction over Defendant because Defendant is domiciled in New York and conducts business in New York.

31. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendant is an educational institution domiciled and doing business in this District.

## FACTUAL ALLEGATIONS

32. Upon information and belief, Defendant's Spring term began on or about January 27, 2020.[6]

33. Upon information and belief, Defendant's Spring term was scheduled to conclude on or about May 16, 2020.[7]

34. As a result of the COVID-19 pandemic, Defendant announced on March 10, 2020

---

[6] https://www.pace.edu/sites/default/files/files/OSA/academic-scheduling/academic-calendar-2019-2020.pdf
[7] Id.

6

that it was transitioning all classes to online classes effective immediately.[8]

35. In the context of the unique benefits in Plaintiff's program of study, the online classes are not equivalent or comparable to the promised classes that were to be provided in-person.

36. The move to online instruction was originally supposed to occur until March 29, 2020, but was extended to apply to the remainder of the semester.[9]

37. As such, Pace has not provided the education, services, facilities, technology, access or opportunities for which Plaintiff had paid for.

38. Moreover, Pace has failed to compensate Plaintiff for the diminished value and damages Plaintiff has suffered as a result of Pace's actions.

39. Plaintiff left campus on or about March 11, 2020 for spring break, with plans to return on or about March 22, 2020.

40. Upon information and belief, Defendant canceled the Rep-Season which has not been rescheduled during the current school year.

41. Defendant has refused to offer any refund whatsoever to Plaintiff.

42. Defendant has refused to refund any Fees paid, provide a refund for the value lost in switching to online classes, or to provide a refund for the cancellation of classes, and the cancellation of the Rep-Season.

43. Although Defendant is still offering some inferior level of academic instruction via online classes, Plaintiff has been and will continue to be deprived of the benefits of in-person

---

[8] https://myemail.constantcontact.com/Coronavirus-Update--Remote-learning-starts- tomorrow.html? soid= 1103481471610& aid=T fKERJBMl_w
[9] https://myemail.constantcontact.com/Coronavirus-Update--Spring-Semester--Commencement--and- More.html?soid= 1103481471610&aid=UBum98S-Y2c

classes.

44. Pace has chosen to provide podcast-level services at graduate-level prices.

45. Moreover, a number of classes were entirely canceled by professors rather than being taught online. In fact, the "Process Lab" class which was used to prepare the plays for the Rep-Season was not held at all once classes went online.

46. However, Defendant has failed, and continues to fail, to offer any type of pro-rated refund on tuition.

47. In fact, Defendant has refused, and continues to refuse, to offer any refund whatsoever for online classes, classes canceled, Fees and the cancellation of the Rep-Season.

## FIRST CAUSE OF ACTION
## (BREACH OF CONTRACT)

48. Plaintiff realleges all preceding paragraphs as if fully set forth herein.

49. Plaintiff entered into a contract with Pace which provided that Plaintiff would pay tuition and Fees for three years.

50. In exchange, the University promised to provide live in-person instruction in a physical classroom, associated services, and in the Rep-Season. That was promised to include three full years of services, which were partially or wholly geared to the purposes of preparing for, and culminating in, the Rep-Season during the third year.

51. Plaintiff performed his end of the bargain when he paid tuition for three years for the purposes of preparing for the Rep-Season, including payment for the current Spring 2020 semester along with the required Fees.

52. Pace breached the contract with Plaintiff by moving all classes for the Spring 2020 semester to online classes, and canceling the Rep-Season and specific on-line classes without reducing or refunding any tuition and the associated Fees.

53. Pace retained tuition and Fees paid by Plaintiff, without providing him the full benefit of their bargain.

54. Plaintiff has suffered damage as a direct and proximate result of Defendant's breach, including, but not limited to, being deprived of the value of the services that the tuition and Fees were intended to cover.

55. As a direct and proximate result of Defendant's breach, Plaintiff is legally and equitably entitled to damages, to be decided by the trier of fact in this action, including, but not limited to, disgorgement of the difference between the value of amount paid by Plaintiff for three years of instruction, and the services provided by Defendant.

56. Such damages, include, but are not limited to, calculation of the lesser value of online learning which is being provided versus the value of the live in-person instruction in a physical classroom that was contracted for, unused services, the cancellation of the Rep-Season, amounts paid for three years for preparation for a Rep-Season which never materialized, and all other damages allowable under the law.

## SECOND COLLECTIVE CAUSE OF ACTION
## (UNJUST ENRICHMENT)

57. Plaintiff realleges all preceding paragraphs as if fully set forth herein.

58. Plaintiff brings this claim in the alternative to the breach of contract claim brought in the First Cause of Action.

59. Pace University has received a benefit at the expense of Plaintiff, to which it is not entitled.

60. Over the course of three years, and most particularly in the Spring 2020 season, Plaintiff paid substantial tuition and Fees for live in-person instruction in physical classrooms, and associated services, and for preparation for the Rep-Season, but did not receive the full

benefit of the bargain.

61. Plaintiff conferred this benefit on Defendant when he paid the tuition and Fees.

62. Defendant has realized this benefit by accepting such payment.

63. Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition and Fees were collected for three years, making Defendant's retention unjust under the circumstances.

64. Equity requires that the University return a portion of the monies paid in tuition and Fees for three years, and for the value of the canceled Rep-Season.

65. Defendant should be required to disgorge and restitute this unjust enrichment.

### THIRD CAUSE OF ACTION
### (CONVERSION)

66. Plaintiff realleges all preceding paragraphs as if fully set forth herein.

67. Plaintiff has the right to in-person education and other on campus services, including, but not limited to, the Rep-Season, that were supposed to be provided in exchange for his three years of payments to Pace.

68. Pace intentionally interfered with the rights and property of the Plaintiff, which Plaintiff paid for, when Pace retained Plaintiff's tuition and Fees intended to pay for on-campus classes, access to facilities such as the library, gym, technology and guest lecture series, and the Rep-Season, but did not provide access to those facilities and services, restricting access in whole or in part.

69. Pace has refused to return such tuition and Fees.

70. Pace's retention of tuition and Fees paid by Plaintiff without providing the full services for which he paid deprived Plaintiff of the benefits for which tuition and the Fees were paid.

71. The cancellation of the Rep-Season and the interference of services for which Plaintiff paid damaged Plaintiff in that he paid tuition and Fees for services that were not, and will not be, provided to him.

72. Plaintiff is entitled to the return of prorated portion of his tuition and Fees paid, and the value of the canceled Rep-Season.

**FOURTH CAUSE OF ACTION**
**(VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349)**

73. Plaintiff realleges all preceding paragraphs as if fully set forth herein.

74. Pace's acts mentioned herein of providing on-line classes, canceling classes and other school privileges and a Rep-Season were directed at consumers.

75. Pace's acts constituted unlawful, unfair and fraudulent business practices because students, such as the Plaintiff, were charged and paid for services that were promised to them but which he did not receive.

76. The above-mentioned acts were misleading in a material way in that Pace requested full tuition and Fees in exchange for in-person classes, access to school facilities and a Rep-Season.

77. Plaintiff has been damaged by reason of being deceived and misled into paying full tuition and Fees for three years preparing for the Rep-Season, when in-person classes, access to school facilities and a Rep-Season were ultimately not provided.

78. To that end, Pace's practice was substantially injurious to consumers, such as the Plaintiff, because they denied Plaintiff and other students the value of goods and services to which they were entitled to and unfairly and misleadingly caused Plaintiff and other students to shoulder the entire burden of Pace's COVID-19 shutdown.

79. With its vastly superior economic resources, Pace unfairly chose to pass the entire

burden of the COVID-19 shutdown to students having far less resources, and to have those students, including the Plaintiff, bear the entire economic burden of that shutdown.

80. Defendant advertised unique and personal educational services to the public at large, but then refused to provide those services to those who paid for them.

81. Defendant has illegally engaged in deceptive acts or practices in the conduct of business trade or commerce or in the furnishing of services in this state.

82. The aforementioned misleading and deceptive misconduct is ongoing and will continue unless enjoined by the Court.

83. By reason of the foregoing, Plaintiff is entitled to his actual damages, restitution, disgorgement and payment of his attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, respectfully requests judgment in its favor and against Defendant as follows:

a. Declaring that Defendant has wrongfully kept monies paid for tuition and other Fees;

b. Awarding Plaintiff restitution, and disgorgement of all profits and unjust enrichment that Pace wrongfully obtained from Plaintiff from tuition and other fees as a result for unlawful, unfair and fraudulent business practices described herein;

c. Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for tuition, and other fees;

d. Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

e. Awarding pre-judgment and post-judgment interest on any amounts awarded, as permitted by law;

f. Order Pace to engage in a corrective advertising campaign; and

g. Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: May 12, 2020

**GOLDBERG COHEN LLP**

By: /s/ Lee A. Goldberg
Lee A. Goldberg
Limor Wigder
1350 Avenue of the Americas
3rd Floor
New York, New York 10019
Tel: (646) 380-2087
Fax: (646) 514-2123
Email: lgoldberg@goldbergcohen.com
       lwigder@goldbergcohen.com